Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (310) 285-5330
E-mail: jpafiti@pomlaw.com

Jeremy A. Lieberman
C. Dov Berger
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
          cdberger@pomlaw.com

Patrick V. Dahlstrom
**POMERANTZ LLP**
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS J. BONANNO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CELLULAR BIOMEDICINE GROUP, INC., WEI CAO, and TONY LIU, <br><br> Defendants. | **No.** <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Francis J. Bonanno ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Cellular Biomedicine Group, Inc., ("CBMG" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired CBMG securities between June 18, 2014 and April 7, 2015, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2.      Defendant Cellular Biomedicine Group Inc., is a biomedicine company that develops treatments for cancerous and degenerative diseases in Greater China. It focuses on developing and marketing cell-based therapies to treat serious chronic and degenerative diseases, such as cancer, osteoarthritis, tissue damage, various inflammatory diseases, and metabolic diseases. The Company develops treatments utilizing proprietary cell based technologies, including immune cell therapy for the treatment of a range of cancers; human adipose-derived mesenchymal progenitor cells for the treatment of joint and autoimmune diseases; and tumor cell specific dendritic cell therapy.

3.     Cellular Biomedicine Group Inc. was incorporated in 2001, is headquartered in Palo Alto, California, and its shares trade on the NASDAQ exchange under the ticker symbol "CBMG."

4.     Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company achieved an unsustainable $500m valuation by using paid stock promoters, yet failed to disclose the use of such promoters in its regulatory filings pursuant to Section 17(b) of the Securities Act of 1933 ; (ii) the Company's "Car-T" technology had experienced patient deaths and lacked any meaningful valuation; and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

5.     On April 7, 2015, a report was published on *Seekingalpha.com*, alleging that the Company was engaged in a massive fraudulent scheme to mislead investors and that the Company lacked any meaningful financial value.  The report stated, in relevant part:

- With paid stock promotion CBMG has achieved an unsustainable $500m valuation, and with $20m in stock sold and insiders stock registered to sell, I expect CBMG will continue to collapse.

- CBMG "Car-T" technology was acquired for $1.8m, has experienced patient deaths and is worthless. CBMG recent R&D of just $4.9m makes the $500m valuation clearly absurd.

- CBMG founders face dishonesty allegations, are responsible for alleged illegal offshore stem cell clinic, while partnered with John Mattera who is currently serving 11 years in prison for fraud (again).

- Multiple accounting and financial integrity issues, CFO and Auditor turnover, "material weaknesses" and "inability to timely file" a full 50% of quarterly SEC filings raises accounting and financial integrity questions.

- Assuming CBMG is "real" and generously valuing CBMG on fundamentals show -94.6% near term and imminent downside.

6.     On this news, CBMG securities declined $7.00 per share, or over 21.7%, to close at $25.22 per share on April 7, 2015.

7. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

10. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as the Company maintains corporate offices in this District.

11. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, acquired CBMG securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant CBMG is a Delaware corporation with its principal executive offices located at 530 University Avenue, Suite 17, Palo Alto, CA 94301. CBMG's common stock trades on the NASDAQ under the ticker symbol "CBMG."

14. Defendant Wei Cao ("Cao") has served at all relevant times as the Company's Chief Executive Officer ("CEO").

15.     Defendant Tony Liu ("Liu") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Secretary.

16.     The defendants referenced above in ¶¶ 15 - 16 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     The Company focuses on monetizing the rapidly growing health care market in China by marketing and commercializing stem cell and immune cell therapeutics, related tools and products from CBMG patent-protected homegrown cell technology developed by the Company's research and development team, as well as by utilizing exclusively in-licensed intellectual properties.

18.     The purported treatment focal points are cancer, neurodegenerative and other degenerative diseases comprised of Knee Osteoarthritis ("KOA"), Spinal Muscular Atrophy ("SMA"), Amyotrophic Lateral Sclerosis ("ALS"), and Stroke.

19.     Under the direction of the Company and the Individual Defendants, paid stock promoters touted the Company's stock over the internet and other fora during the Class Period.

20.     The purpose of the promotional campaign was to raise additional capital, artificially increase shareholder value, and raise the Company's profile in the capital markets. This promotional campaign included dozens of published articles and/or news reports.  The Company never disclosed this promotional campaign in its public filings.

### Securities Laws On Stock Promotion

21.     Section 17(b) of the Securities Act of 1933 [15 U.S.C. 77q(b)] is commonly known as the "anti-touting" provision. It prohibits publicizing information about a security without "fully disclosing" any consideration received or to be received, directly or indirectly, from the issuer, and the

1    amount thereof. *Id.*   Moreover, an of issuer securities is also required to disclose the details of its

2    relationship with a stock promoter in its regulatory filings.

3                       **Materially False and Misleading Statements**
                        **Issued During the Period**

4

5    22.    On June 18, 2014, the first day of the Class Period, the Company commenced trading on

     the NASDAQ exchange.  On June 18, 2014, the Company issued a press release, stating, in part:

6

7    Cellular Biomedicine Group Inc. (NASDAQ: CBMG) (the "Company"), a biomedicine
     firm engaged in the development of new treatments for degenerative and cancerous
     diseases, announced today that its common stock commences trading on NASDAQ under

8    the ticker symbol "CBMG" effective today, June 18, 2014.

9    "We are extremely proud to be an early pure-play biotechnology company from China to
     be approved for listing on The NASDAQ Capital Market and are gratified to have

10   reached this significant milestone in the Company's history. We believe this achievement
     will provide greater visibility for our stock and that this accomplishment demonstrates to

11   our shareholders our commitment to building shareholder value while improving the
     quality of life for countless patients," stated Dr. Wei (William) Cao, Chief Executive

12   Officer of Cellular Biomedicine Group.

13   Mr. Bizuo (Tony) Liu, Chief Financial Officer of Cellular Biomedicine Group,
     commented, "Following a comprehensive evaluation of all U.S. exchanges, we

14   determined that The NASDAQ Capital Market was the best fit for Cellular Biomedicine
     Group. CBMG has met and will remain subject to all the NASDAQ listing

15   requirements."

16   23.    On August 14, 2014, the Company issued a press release announcing second quarter and

17   first half 2014 financial results and provided business highlights.  The press release stated, in part:

18   PALO ALTO, Calif., Aug. 14, 2014 (GLOBE NEWSWIRE) — Cellular Biomedicine
     Group Inc. (Nasdaq:CBMG) (the "Company"), a biomedicine firm engaged in the

19   development of new treatments for degenerative and cancerous diseases, today reported
     financial results for the three and six months ended June 30, 2014 and provided business

20   highlights including the six-month data from its Phase I/IIa clinical trial for
     ReJoin™ treatment for Knee Osteoarthritis (KOA).

21

22   Dr. William (Wei) Cao, Chief Executive Officer of Cellular Biomedicine Group,
     commented, "We are very excited about the progress we have made so far this year with
     our lead product candidate ReJoin™ for Knee Osteoarthritis, especially with the Phase

23   IIa twelve-month follow-up MRI test has been
     completed and final analysis will be available in the third quarter of this year. All

24   patients in the Phase IIb trial completed treatment in July.   We grew our Intellectual

                                          6

Property portfolio to 41 patents in various stages of approval in China, U.S. and PCT, including 12 granted China patents. We are excited about our recent announcement to add new potential reduced time-to-commercialization TCR cancer immunotherapy to our technology platform."

**Financial Results**

Cellular Biomedicine Group reported a net loss for the three and six months ended June 30, 2014 of $6.7 million, or $0.85 loss per share and $7.1 million, or $0.93 loss per share, respectively, compared to a net loss of $2.5 million, or $0.44 loss per share, and $7.9 million, or $1.52 loss per share, for the same periods a year ago. The increase in net loss of $4.2 million for the three months ended June 30, 2014 compared to the same period in 2013 is related to one-time costs incurred, including impairment of goodwill and employee severance, for the discontinuation of the Consulting segment. The decrease in net loss of $0.8 million for the six months ended June 30, 2014 compared to the same period in 2013 is due to one-time merger expenses incurred in 2013, partially offset by the costs of discontinuing the Consulting segment.

General and administrative expenses for the three months ended June 30, 2014 increased $0.1 million compared to the same period in 2013. The six months ended June 30, 2014 decreased $2.7 million as compared to the same period in 2013, mainly from the costs related to merger activities incurred in 2013.
Research and development expense, depreciation and amortization expense remained relatively unchanged for the three and six months ended June 30, 2014 and 2013. Other income changed minimally as compared to prior periods for rent subsidy.

As of June 30, 2014, the Company had $13.6 million in cash and cash equivalents. For the six months ended June 30, 2014, cash used for operations was $4.7 million compared to $4.6 million for the same period in 2013.

24.    That same day, the Company filed its quarterly report on Form 10-Q with the SEC reiterating the previously announced financial results, which was signed by defendants Cao and Liu. In addition, the Form 10-Q contained certifications signed pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Cao and Liu, stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

25.    On November 19, 2014, the Company issued a press release announcing third quarter 2014 financial results and providing business highlights. The press release stated, in part:

PALO ALTO, Calif., Nov. 19, 2014 (GLOBE NEWSWIRE) — Cellular Biomedicine Group Inc. (Nasdaq:CBMG) (the "Company"), a biomedicine firm engaged in the development of effective treatments for degenerative and cancerous diseases, today reported financial results and provided business highlights for the third quarter ended September 30, 2014.

Dr. William (Wei) Cao, Chief Executive Officer of Cellular Biomedicine Group, commented, "In the third quarter we continued to execute our focus of acquiring advanced technologies and talents that position CBMG as a leader in both stem cell and cancer immune cell technologies in China. With completion of the acquisition of Agreen Biotech Co. Ltd. China ("AG"), we added a distinguished cancer immune cell therapy platform that we expect would provide consistent technical service revenue stream and pipeline to our technology platform.We grew our Intellectual Property portfolio to 45 patents in various stages of approval in China, U.S. and through the Patent Cooperation Treaty (PCT), including one granted US Patent and 13 granted China patents.  Our lead regenerative medicine product candidate ReJoinTM for Knee Osteoarthritis (KOA) continues to make excellent progress. We look forward to announcing the KOA Phase I/IIa clinical trial twelve-month follow-up results at the World Stem Cell Summit in San Antonio, Texas on December 5th, and we expect to announce the interim data from the Phase IIb trial in the next few months."

**Financial Results**

Cellular Biomedicine Group reported a net loss for the three months ended September 30, 2014 of approximately $2.8 million, or $0.31 loss per share, compared to a net gain of approximately $0.6 million, or $0.09 gain per share for the same period a year ago. The increase in net loss of approximately $3.4 million is related to the discontinuation of the consulting business in Q2 2014, which contributed a net profit of approximately $2.3 million for the three months ended September 2013.

General and administrative expenses for the three months ended September 30, 2014 increased approximately $0.6 million compared to the same period in 2013, which mainly resulted from payroll increase of approximately $0.4 million and travel expense increase of approximately $0.2 million.

For the three months ended September 30, 2014, research and development expense increased by approximately $0.5 million compared with same period last year, which mainly resulted from the increase in experiment fees of approximately $0.5 million. Other income changed minimally mainly due to the fluctuation of foreign currency gains and losses.

As of September 30, 2014, the Company had approximately $9.8 million in cash and cash equivalents.

26.     On November 19, 2014, the Company filed its quarterly report on Form 10-Q with the SEC reiterating the previously announced financial results, which was signed by defendants Cao and

Liu.  In addition, the Form 10-Q contained certifications signed pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Cao and Liu, stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

27.     Moreover, the Form 10-Q contained the following disclosure regarding stock promoters:

Stockholders should be aware that, according to SEC Release No. 34-29093, the market for penny stocks has suffered in recent years from patterns of fraud and abuse. Such patterns include (1) control of the market for the security by one or a few broker-dealers that are often related to the promoter or issuer; (2) manipulation of prices through prearranged matching of purchases and sales and false and misleading press releases; (3) boiler room practices involving high-pressure sales tactics and unrealistic price projections by inexperienced sales persons; (4) excessive and undisclosed bid-ask differential and markups by selling broker-dealers; and (5) the wholesale dumping of the same securities by promoters and broker-dealers after prices have been manipulated to a desired level, along with the resulting inevitable collapse of those prices and with consequent investor losses. ***Our management is aware of the abuses that have occurred historically in the penny stock market. Although we do not expect to be in a position to dictate the behavior of the market or of broker-dealers who participate in the market, management will strive within the confines of practical limitations to prevent the described patterns from being established with respect to our securities.*** However, the occurrence of these patterns or practices could increase the volatility of our share price.

28.     On February 2, 2015, "LifeTech Capital", a purported research-focused biotechnology and medical technology investment bank, raised their target price to $32.50 on CBMG with a Strong Speculative Buy rating.  The 26-page report, authored by Stephen M. Dunn, Senior Managing Director of Research at LifeTech Capital, discusses CBMG's latest acquisitions and new market valuation. In the report Mr. Dunn states, "With 4 human clinical and 2 preclinical programs in immuno-oncology, CBMG is now the leader in China for this promising cancer technology. We expect CBMG to continue their aggressive acquisition strategy for immuno-oncology drugs in China as well as sign development partnerships with western pharma companies for the Chinese market."

29.     On March 31, 2015, the Company issued a press release announcing full-year and fourth quarter 2014 financial results. The press release stated, in part:

SHANGHAI, China and PALO ALTO, Calif., March 31, 2015 /GlobeNewswire/ — Cellular Biomedicine Group Inc. (NASDAQ: CBMG) ("CBMG" or the "Company"), a biomedicine firm engaged in the development of effective treatments for degenerative and cancerous diseases, today reported full-year and fourth quarter 2014 financial results for the period ended December 31, 2014.

"2014 laid the foundation for building a world-class biotechnology enterprise that was marked by achieving notable corporate and clinical milestones and meaningful acquisitions that will drive our business momentum as we move into 2015," said William (Wei) Cao, PhD, BM, Chief Executive Officer of Cellular Biomedicine Group. "In addition to our successful listing on NASDAQ, we accelerated the growth of our Immuno-Oncology platform through the acquisition of Agreen Biotech Co. Ltd. China ("AG"), the acquisition of third generation Chimeric Antigen Receptor T cell (CAR-T), anti-PD-1, CD19 and aAPC cancer immunotherapy technologies from Persongen Biotechnology Ltd., and the acquisition of four CAR-T therapies with corresponding Phase I clinical data and manufacturing knowledge from Chinese PLA General Hospital ("PLAGH", Beijing, also known as "301 Hospital"). The Company's lead product candidate from our Human Adipose-Derived Mesenchymal Progenitor Cell (haMPC) Platform, ReJoin$^{TM}$ for the treatment of Knee Osteoarthritis (KOA), reported positive 12 month results from its Phase IIa clinical trials in 2014 and we are encouraged by the interim Phase IIb clinical data released in the first quarter of 2015 which continues to show excellent progress. We look forward to 2015 as we continue to amalgamate novel cancer technology leaders, deliver promise from our clinical trials to serve several large unmet medical needs in China and seek to evolve into a leader in the biotechnology field."

Tony (Bizuo) Liu, Chief Financial Officer of the Company, commented, "I am pleased to also announce the successful completion of an $18 million private placement transaction in 2014 and $20 million in 2015 which fortified our cash position. We will continue to leverage our financial resources to expand our technology portfolio, strengthen our clinical pipeline, pursue strategic acquisitions, add world-class scientific talent and evaluate multi-national licensing opportunities. We believe these strategic initiatives will further validate our vision of becoming an innovative cell-therapy company that delivers value to our shareholders."

**Fourth Quarter and 2014 Financial Performance**

1. **Cash Position:** Cash and liabilities at December 31, 2014 of approximately $14.8 million and $4.5 million, respectively. (Subsequently, in March 2015, the Company closed a private placement transaction for total gross proceeds of approximately $20,000,000).

2. **Net Cash Used in Operating Activities:** Q4 and full-year 2014 net cash used in operating activities of $2.2 million and $10.3 million, respectively, compared to $1.3 million and $8.5 million for the same periods in 2013.

3. **Revenue:** Q4 and full-year 2014 revenue of $0.4 million and $0.6 million, respectively, compared to $0.1 million and $0.2 million for the same periods in 2013.

4. **G&A Expenses:** Q4 and full-year 2014 general and administrative expenses of $3.3 million and $8.4 million, respectively, compared to $2.2 million and $9.3 million for the same periods in 2013. Excluding the stock-based compensation of $1.9 million and $1.5 million recorded in G&A expenses for full-year 2014 and 2013, the G&A expenses would have been $6.5 million and $7.8 respectively.

5. **R&D Expenses:** Q4 and full-year 2014 research and development expenses of $0.8 million and $2.7 million, respectively, compared to $0.6 million and $1.9 million for the same periods a year ago, the increase mainly attributable to significant activities surrounding the development of our biomedicine intellectual property, including the implementation of Phase IIb clinical trials for KOA and launch of the clinical trial for cartilage damage.

6. **Net Loss:** Q4 and full-year 2014 net loss allocable to common stock holders was $5.5 million and $15.5 million, respectively, compared to $6.5 million and $13.8 million for the same periods in 2013. Excluding the stock-based compensation of $1.9 million and $1.5 million recorded for full-year 2014 and 2013, the net loss would have been $13.6 million and $12.3 million respectively.

30.     On March 31, 2015, the Company filed its annual report on Form 10-K with the SEC reiterating the previously announced financial results, which was signed by defendants Cao and Liu.  In addition, the Form 10-K contained certifications signed pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Cao and Liu, stating that the financial information contained in the Form 10-K was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

31.     Moreover, the Form 10-K stated the following regarding stock promotion:

Stockholders should be aware that, according to SEC Release No. 34-29093, the market for penny stocks has suffered in recent years from patterns of fraud and abuse. Such patterns include (1) control of the market for the security by one or a few broker-dealers that are often related to the promoter or issuer; (2) manipulation of prices through prearranged matching of purchases and sales and false and misleading press releases; (3) boiler room practices involving high-pressure sales tactics and unrealistic price projections by inexperienced sales persons; (4) excessive and undisclosed bid-ask differential and markups by selling broker-dealers; and (5) the wholesale dumping of the same securities by promoters and broker-dealers after prices have been manipulated to a desired level, along with the resulting inevitable collapse of those prices and with consequent investor losses. ***Our management is aware of the abuses that have occurred***

*historically in the penny stock market. Although we do not expect to be in a position to dictate the behavior of the market or of broker-dealers who participate in the market, management will strive within the confines of practical limitations to prevent the described patterns from being established with respect to our securities*. However, the occurrence of these patterns or practices could increase the volatility of our share price

32. The statements in ¶¶ 22-31 above were materially false and/or misleading because they misrepresented and/or failed to disclose that: (i) the Company achieved an unsustainable $500m valuation by using paid stock promoters; (ii) its "Car-T" technology has experienced patient deaths and had no meaningful market value; (iii) its founders have been the target of multiple allegations of dishonesty; and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

33. On April 7, 2015, a report was published on *Seekingalpha.com*, alleging that the Company was engaged in a massive fraudulent scheme to mislead investors and that the Company had no meaningful financial value. The report stated, in part:

- With paid stock promotion CBMG has achieved an unsustainable $500m valuation, and with $20m in stock sold and insiders stock registered to sell, I expect CBMG will continue to collapse.

- CBMG "Car-T" technology was acquired for $1.8m, has experienced patient deaths and is worthless. CBMG recent R&D of just $4.9m makes the $500m valuation clearly absurd.

- CBMG founders face dishonesty allegations, are responsible for alleged illegal offshore stem cell clinic, while partnered with John Mattera who is currently serving 11 years in prison for fraud (again).

- Multiple accounting and financial integrity issues, CFO and Auditor turnover, "material weaknesses" and "inability to timely file" a full 50% of quarterly SEC filings raises accounting and financial integrity questions.

- Assuming CBMG is "real" and generously valuing CBMG on fundamentals show -94.6% near term and imminent downside.

34. On this news, CBMG securities declined $7.00 per share, or over 21.7%, to close at $25.22 per share on April 7, 2015.

35.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired CBMG securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, CBMG securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by CBMG or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of CBMG;

- whether the Individual Defendants caused CBMG to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of CBMG securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- CBMG securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold CBMG securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase

and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of CBMG securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire CBMG securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for CBMG securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about CBMG's finances and business prospects.

49.     By virtue of their positions at CBMG, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of CBMG securities from their personal portfolios.

51.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of CBMG, the Individual Defendants had knowledge of the details of CBMG's internal affairs.

52.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of CBMG.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to CBMG's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of CBMG securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning CBMG's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired CBMG securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

53.     During the Class Period, CBMG securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of CBMG securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of CBMG securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of CBMG securities

declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

54.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     During the Class Period, the Individual Defendants participated in the operation and management of CBMG, and conducted and participated, directly and indirectly, in the conduct of CBMG's business affairs.   Because of their senior positions, they knew the adverse non-public information about CBMG's false financial statements.

58.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to CBMG's financial condition and results of operations, and to correct promptly any public statements issued by CBMG which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which CBMG disseminated in the marketplace during the Class Period concerning CBMG's

results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause CBMG to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of CBMG within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of CBMG securities.

60. Each of the Individual Defendants, therefore, acted as a controlling person of CBMG. By reason of their senior management positions and/or being directors of CBMG, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, CBMG to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of CBMG and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by CBMG.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as his reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: April 21, 2015

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (310) 285-5330
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
C. Dov Berger
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1.  I, _Francis J. Bonanno_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Cellular Biomedicine Group Inc. ("CBMG" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire CBMG securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired CBMG securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in CBMG securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed _____4/8/15_____
             **(Date)**

_____
             **(Signature)**

_____
             **(Type or Print Name)**

**CELLULAR BIOMEDICINE GROUP INC. (CBMG)**                    **Bonanno, Francis J.**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 4/6/2015 | PUR | 100 | $35.9100 |