GREGORY K. KLINGSPORN (203649)
JORGENSON, SIEGEL, McCLURE & FLEGEL, LLP
1100 Alma Street, Suite 210
Menlo Park, CA  94025
Telephone:      (650) 324-9300
Facsimile:      (650) 324-0227
Email: gkk@jsmf.com

IRWIN WELTZ (Admitted *Pro Hac Vice*)
SICHENZIA ROSS FRIEDMAN FERENCE, LLP
61 Broadway, 32nd Floor
New York, NY  10006
Telephone:      (212) 930-9700
Facsimile:      (212) 930-9725
Email: iweltz@srff.com

Attorneys for Defendants
LIFETECH CAPITAL and STEPHEN M. DUNN

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANCIS J. BONANNO, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>CELLULAR BIOMEDICINE GROUP, INC., et al.,<br><br>        Defendants. | Case No.: 3:15-CV-01795-WHO<br><br>**CLASS ACTION**<br><br>**DEFENDANTS LIFETECH CAPITAL AND STEPHEN M. DUNN'S NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:   April 6, 2016<br>Hearing Time:  2:00 p.m.<br>Dept.:              Courtroom 2<br>Judge:             Hon. William H. Orrick<br><br>Date Filed:       September 17, 2015<br><br>Trial Date:       None |

i

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.     INTRODUCTION .............................................................................. 1

II.    STATEMENT OF MATERIAL FACTS AND ALLEGATIONS ....................................... 2

III.   LEGAL STANDARDS ......................................................................... 8

      A.   General Standards Governing Motions to Dismiss ........................................ 8

      B.   Section 10(b) Claims ............................................................... 9

IV.   ARGUMENT ................................................................................ 10

      A.   The Amended Complaint Should Be Dismissed ............................................ 10

           1.   Plaintiffs Fail to Allege an Actionable Misstatement or Omission ..................... 10

           2.   Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter ........ 15

           3.   Plaintiffs Fail to Plead Loss Causation ............................................. 17

           4.   Plaintiffs Fail to Plead Scheme Liability ........................................... 21

V.    CONCLUSION .............................................................................. 23

**TABLE OF AUTHORITIES**

**Federal Cases**                                                                 Page(s)

Abbate v. Wells Fargo Bank, N.A., No. CV 10-6561 DOC (RBNx),
2011 WL 9698215 (C.D. Cal. Nov. 17, 2011)......................................................... 21, 22

Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv., 189 F.3d 1017 (9th Cir. 1999)......................... 10

Ashcroft v. Iqbal, 556 U.S. 662 (2009).................................................................. 8

Banks.com, Inc. v. Keery, No. 09-06039 WHA,
2010 WL 727973 (N.D. Cal. March 1, 2010)............................................................. 8

Brody v. Transitional Hosps. Corp., 280 F.3d 997 (9th Cir. 2002) ................................... 13

Brown v. Ambow Educ. Holding Ltd., No. CV 12-5062 PSG (AJWx),
2014 WL 523166 (C.D. Cal. Feb. 6, 2014)............................................................. 17

Browning v. Amyris, Inc., No. 13-cv-02209-WHO,
2014 WL 1285175 (N.D. Cal. March 24, 2014)....................................................... 8, 9, 10

Central Bank of Denver v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994)............. 22

Cent. States v. Fed. Home Loan Mortg. Corp., 543 Fed. Appx. 72 (2d Cir. 2013)..................... 19

Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (2005) ................................................... 17

Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976)................................................... 15

Flannery v. SEC, 2015 U.S. App. LEXIS 21244 (1st Cir. Dec. 8, 2015).................................. 22

Glazer Capital Management, LP v. Magistri, 549 F.3d 736 (9th Cir. 2008) ........................... 17

In re Blue Earth, Inc., Sec. Class Action Litig.,
Case No. CV 14-08263-DSF (JEMx) (C.D. Cal. November 3, 2015) ............................ 19, 20, 21

In re Cutera Sec. Litig., 610 F.3d 1103 (9th Cir. 2010)............................................. 14

iii

In re Downey Sec. Litig., No. CV 08-3261-JFW (RZx),
2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ............................................................. 16

In re Fusion-io, Inc. Sec. Litig., No. 13-Civ-05368 LHK,
2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ............................................................. 14

In re Gilead Scis. Sec. Litig., 536 F.3d 1049 (9th Cir. 2008) ......................................... 8

In re Herbalife, Ltd. Sec. Litig., No. CV 14-2850 DSF (JCGx),
2015 WL 1245191 (C.D. Cal. Mar. 16, 2015) .................................................... 10, 18

In re Nuveen Funds/City of Alameda Sec. Litig., No. C 08-4575-SI,
No. C 09-1437-SI, 2011 WL 1842819 (N.D. Cal. May 16, 2011) ............................... 18

In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046 (9th Cir. 2014) ..................................... 8

In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501 (2d Cir. 2010) ............................... 19

In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970 (9th Cir. 1999) ............................ 15

In re Tibco Software, Inc. Sec. Litig., No. C 05-2146 SBA,
2006 WL 1469654 (N.D. Cal. May 25, 2006) ............................................................. 17

In re Velti PLC Sec. Litig., No. 13-cv-03889-WHO,
2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) ............................................................... 15

In re VeriFone Holdings, Inc. Sec. Litig., 704 F.3d 694 (9th Cir. 2012) ....................... 10

In re Washington Public Power Supply Sys. Sec. Litig.,
823 F.2d 1349 (9th Cir 1987) .................................................................................... 13

Janus Capital Group, Inc. v. First Derivative Traders,
131 S. Ct. 2296, 564 U.S. 135 (2011) ........................................................................ 14

Lipton v. PathoGenesis Corp., 284 F.3d 1027, 1035 (9th Cir. 2002) ............................ 17

Loos v. Immersion Corp., 762 F.3d 880 (9th Cir. 2014) ......................................... 10, 18

iv

<u>Matrixx Initiatives Inc. v. Siracusano</u>, 563 U.S. 27 (2011) ..................................................... 15-16

<u>Metzler Inv. GMBH v. Corinthian Colleges, Inc.</u>, 540 F.3d 1049 (9th Cir. 2008) ...... 9, 13, 17, 18

<u>Meyer v. Greene</u>, 710 F.3d 1189 (11th Cir. 2013) ........................................................ 18

<u>Navarro v. Block</u>, 250 F.3d 729 (9th Cir. 2001)............................................................ 8

<u>Oregon Public Employees Retirement Fund v. Apollo Group, Inc.</u>,
774 F.3d 598 (9th Cir. 2014) ............................................................................. 9, 10, 17

<u>Police Retirement System of St. Louis v. Intuitive Surgical, Inc.</u>,
759 F.3d 1051 (9th Cir. 2014) ..................................................................................... 13

<u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.</u>,
552 U.S. 148 (2008)...................................................................................................... 9

<u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308 (2007) .............................. 8, 9, 10, 16

<u>Tripp v. IndyMac Financial Inc.</u>, No. CV 07-1635-GW (VBKx),
2007 WL 4591930 (C.D. Cal. Nov. 29, 2007)....................................................... 16-17

<u>Wenger v. Lumisys, Inc.</u>, 2 F.Supp.2d 1231 (N.D. Cal. 1998)....................................... 9

<u>WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.</u>,
655 F.3d 1039 (9th Cir. 2011) ............................................................................... 21-22

<u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981 (9th Cir. 2009)....................... 17

**<u>Other Cases</u>**                                                                       <u>Page(s)</u>

<u>In re Flannery</u>, S.E.C. Release No. 3981, 2014 WL 7145625 (Dec. 15, 2014)............ 22

**Federal Statutes**

15 U.S.C. § 78u-4(b)(1)(B).......................................................................................... 9

v

15 U.S.C. § 78u–4(b)(2) ............................................................................... 10

Section 17(b) of the Securities Act of 1933 ................................................. 13

**Federal Rules**

Federal Rule of Civil Procedure 9(b) ............................................................ 9

Federal Rule of Civil Procedure 12(b)(6)……..………………………...…………………..8

vi

## <u>NOTICE OF MOTION AND MOTION</u>

Please take notice that on April 6, 2015, at 2:00 p.m., or such other date to be set by the Court, at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 2, before the Honorable William H. Orrick, Defendants LifeTech Capital and Stephen M. Dunn (collectively "Defendants") will and hereby do move the Court for an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint") in this action.

This motion is based on the Memorandum of Points and Authorities, the Request for Judicial Notice, and the Declaration of Irwin Weltz, filed concurrently herewith, on all pleadings and papers on file or to be filed in the above-entitled action, arguments of counsel, and any other matters that may properly come before the Court for its consideration.

### ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))

1. Does the Amended Complaint plead an actionable misstatement or omission under Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA")?

2. Does the Amended Complaint plead with particularity facts giving a rise to a strong inference that Defendants acted with scienter under Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA?

3. Does the Amended Complaint plead loss causation under Rule 9(b) of the Federal Rules of Civil Procedure?

4. Does the Amended Complaint plead a claim for Rule 10b-5(a) and (c) scheme liability under Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA?

Dated:  January 19, 2016

JORGENSON, SIEGEL,
McCLURE & FLEGEL, LLP


By: */s/ Gregory Klingsporn*
Gregory K. Klingsporn
1100 Alma Street, Suite 210
Menlo Park, CA  94025
Telephone:     (650) 324-9300

vii

Facsimile:       (650) 324-0227
Email: gkk@jsmf.com

SICHENZIA ROSS FRIEDMAN
FERENCE LLP
Irwin Weltz, Esq. (Admitted *Pro Hac Vice*)
61 Broadway, 32nd Floor
New York, NY  10006
Telephone:      (212) 930-9700
Facsimile:       (212) 930-9725
Email: iweltz@srff.com

Attorneys for Defendants
LIFETECH CAPITAL and
STEPHEN M. DUNN

DEFENDANTS LIFETECH CAPITAL AND STEPHEN M. DUNN'S NOTICE OF MOTION AND MOTION TO
DISMISS THE AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF- CASE NO. 3:15-CV-01795-WHO

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Amended Class Action Complaint for Violations of the Federal Securities Laws, dated September 17, 2015 (the "Amended Complaint" or "AC"), alleges that Defendants LifeTech Capital ("LifeTech") and Stephen M. Dunn ("Dunn") violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder because they purportedly issued positive research concerning Defendant Cellular Biomedicine Group, Inc. ("CBMG") during the "Class Period" (of December  10, 2014 – April 7, 2015) without adequately disclosing compensation arrangements with CBMG. AC, ¶¶ 95-98, 107-119, 132-136.  The truth allegedly emerged when, on April 7, 2015, an anonymous short seller of CBMG stock – the "Pump Stopper" – issued a report providing its opinion, based on publicly available information, that CBMG had engaged in a massive fraudulent scheme that included, among other things, paid stock promotional activity.  AC, ¶ 128.  The Amended Complaint alleges that "[o]n this news" CBMG's stock declined by over 21.7%. AC, ¶ 129.

Plaintiffs' claims cannot succeed.  Dunn, a research analyst employed at a FINRA broker-dealer, was not a "paid shill" for CBMG, and neither Dunn nor LifeTech were paid by CBMG for their research, recommendations or views expressed.  Notwithstanding Plaintiffs' efforts to distort and obfuscate these facts in their 59-page, 167-paragraph Amended Complaint, it is undeniable that both of the institutional research reports at issue conspicuously disclose that LifeTech had previously provided strategic consulting services that terminated months before the first research report had been published and that the "Firm or affiliates expect to receive or intend to seek investment banking compensation in [the] next 3 months."  See Declaration of Irwin Weltz in Support of Request for Judicial Notice ("Weltz Decl."), filed herewith, Ex. A, at 24, Ex. D, at 25.

In fact, the crux of Plaintiffs' claims against LifeTech and Dunn - that the Pump Stopper's report somehow "exposed" an alleged "undisclosed paid promotion scheme" – is

1

directly contradicted by the Pump Stopper.  The Pump Stopper does not accuse either LifeTech or Dunn of engaging in an undisclosed paid promotion scheme.  To the contrary, the Pump Stopper provides its opinion that *the disclosures made by LifeTech and Dunn* "prove clear compensation with direct conflicts of interest" and that "the blatant conflict of interest here for someone theoretically publishing research for free on a company that paid them is beyond dispute."  See Weltz Decl., Ex. H, at 2-3.  While LifeTech and Dunn strongly disagree with the Pump Stopper's misguided opinion, there can be no dispute about the disclosures.

In brief, the Amended Complaint fails to state a claim against LifeTech and Dunn because Plaintiffs fail to plead any material misstatement or omission, scienter and loss causation under the heightened and exacting pleading standards applicable to this action.

## II.   STATEMENT OF MATERIAL FACTS AND ALLEGATIONS[1]

Defendant CBMG is a Delaware corporation with its principal executive offices located in Palo Alto, California.  AC, ¶ 21.  CBMG's common stock trades on the NASDAQ under the ticker symbol "CBMG." Id.  LifeTech has "a multi-disciplinary team of investment professionals specializing in serving the unique needs of Biotech, MedTech and High-Tech industries and investor community," including institutional research, investment banking and capital markets teams.  AC, ¶ 27.  LifeTech has been a division of Aurora Capital LLC ("Aurora Capital"), a broker-dealer and member of the Financial Industry Regulatory Authority ("FINRA").  Weltz Decl., Ex. A, at 1.  The Amended Complaint does not allege that LifeTech is any type of entity, partnership or trust.

Dunn is the senior managing director of research for LifeTech.  AC, ¶ 28.  During the putative Class Period, LifeTech and Dunn allegedly prepared and disseminated research reports

---

[1] This Statement of Material Facts and Allegations is derived from the Amended Complaint and the documents referenced therein.

2

and participated in interviews and other forums purportedly without "adequately" disclosing that Dunn was purportedly paid to create and distribute that content.  AC, ¶ 28.

On February 2, 2015, LifeTech initiated research coverage of CBMG in a 25-page institutional report, authored by Dunn, with a "strong speculative buy" rating and a price target of $23.75 (the "First Report"). AC, ¶ 95; Weltz Decl., Ex. A, at 1.  At the bottom of the first page of the First Report it states (in bold and large type) to "**Please See Last Two Pages For Important Disclosures And Analyst Certification**."   Pages 24 and 25 of the First Report include a "Disclosures" section that sets forth "Ratings and Price Target Changes over Past 3 Years," the "Analyst Certification" and financial "Disclosures," "Ratings Definitions," additional disclosures concerning LifeTech research coverage and ratings and other "legal disclaimers." Weltz Decl., Ex. A, at 24-25.

The "Disclosures" section at page 24 of the First Report under the "Analyst Certification" states that "[n]o part of [Dunn's] compensation is directly or indirectly related to the specific recommendations or views expressed in this research report." Id. at 24.  LifeTech, Dunn and Aurora Capital made further financial and other disclosures in the below chart reproduced from page 24 of the First Report:

| DISCLOSURES | |
|---|---|
| Does the Analyst or any member of the Analyst's household have a financial interest in any securities of the Company? | No |
| Does the Analyst or any member of the Analyst's household or Firm serve as an officer, director or advisory board member of the Company? | No |
| Has the Analyst or any member of the Analyst's household received compensation directly or indirectly from the Company in the previous 12 months? | YES* |
| Does the Firm or affiliates beneficially own ≥1% of the Company's common stock? | NO |
| Has the Firm or affiliates received investment banking services compensation in previous 12 months? | NO |
| Has the Firm or affiliates received non-investment banking securities-related services compensation in previous 12 months? | NO |
| Does the Firm or affiliates expect to receive or intend to seek investment banking compensation in next 3 months? | YES |
| Has the Firm or affiliates received non-securities services compensation in previous 12 months? | YES |
| Does the Firm or affiliates make a market in the Company's securities? | NO |

3

The First Report further discloses next to the asterisk just below the above "Disclosures" chart that "LifeTech Capital provided strategic consulting services from October 1, 2014 to November 30, 2014 with a portion of the fee received by the analyst as compensation for work performed." Id. at 24; AC, ¶ 97.  Thus, while Dunn correctly and accurately certified that he had not been paid for the "the specific recommendations or views expressed in this research report," there is full disclosure of the fact that LifeTech had previously provided strategic consulting services to CBMG and Dunn received a portion of the fee.  As described, those services ended months before LifeTech and Dunn (via Aurora Capital) initiated institutional research coverage on CBMG.  Id.

Despite these clear and unambiguous disclosures, the Amended Complaint alleges that the "foregoing was materially false and misleading" because "Defendants knew or recklessly disregarded that Defendants LifeTech and Dunn had received compensation for the positive research they published on the Company and that the disclosure at the report's end did not fully disclose all material facts about the compensation arrangement between Cellular Biomed and Dunn and LifeTech." AC, ¶ 98.  No further detail is provided.

On February 2, 2015, LifeTech issued a brief press release relating to the First Report. AC, ¶ 96; Weltz Decl., Ex. B.  The press release states, among other things, that "The full Initiation Report, including important disclosures, is available for download free of charge at the LifeTech Capital website http://lifetechcapital.com/ltc/?p=4437."  Weltz Decl., Ex. B.

On February 11, 2015, Defendant Institutional Analyst, Inc. ("IAI") published a blog post on the Internet Stock Review, which included LifeTech's February 2, 2015 press release.  AC, ¶ 107; Weltz Decl., Ex. C.  The Amended Complaint claims that the IAI blog post omitted "any disclosure about whether Dunn or LifeTech received compensation for the LifeTech report" when, in fact, LifeTech's February 2, 2015 press release included within IAI's blog post states that "The full Initiation Report, including important disclosures, is available for download free of

4

charge at the LifeTech Capital website http://lifetechcapital.com/ltc/?p=4437." Weltz Decl., Ex. C, at 4.

On February 17, 2015, LifeTech (a division of Aurora Capital) issued a second institutional research report on CBMG (the "Second Report") raising its price target.  AC, ¶ 108; Weltz Decl., Ex. D.  As is the case with the First Report, the 26-page Second Report states at the bottom of the first page (in bold and large type) to "**Please See Last Two Pages For Important Disclosures And Analyst Certification**." Weltz Decl., Ex. D, at 1.  The last two pages of the Second Report, i.e., the "Disclosures" section at pages 25-26, are the same as the last two pages of the First Report, except for the updated rating and price target.  Compare Weltz Decl., Ex. A, at 24-25 and Weltz Decl., Ex. D, at 25-26.

On February 17, 2015, LifeTech issued a brief press release relating to the Second Report.  AC, ¶ 110; Weltz Decl., Ex. E.  The press release states, among other things, that "The full research report, including important disclosures, is available for download free of charge at the LifeTech Capital website http://lifetechcapital.com/ltc/?p=4443." Weltz Decl., Ex. E.  The Amended Complaint alleges that even though the February 2 press release contains a link to the First Report and the February 17 press release contains a link to the Second Report, including important disclosures, that "[t]he press release[s] contained no disclosure concerning any payment LifeTech and Dunn received from Cellular Biomed." AC, ¶¶ 96, 107, 110.

On February 17, 2015, IAI published a blog post on the Internet Stock Review, which included LifeTech's February 17, 2015 press release. AC, ¶ 112; Weltz Decl., Ex. F, at 2-3.  As described above, LifeTech's February 17, 2015 press release states that "The full research report, including important disclosures, is available for download free of charge at the LifeTech Capital website http://lifetechcapital.com/ltc/?p=4443." Weltz Decl., Ex. F, at 2-3.  Ignoring the link to the full research report published in the IAI blog post, the Amended Complaint alleges that by IAI uploading the press release LifeTech "avoided any disclosure compensation they may have

5

received" and that "[o]nce again, a LifeTech report took on a life of its own, divorced even from Dunn's inadequate disclosure of compensation in the report itself." AC, ¶¶ 112-113.

On February 19, 2015, Defendant Streetwise Reports published an edition of its online blog *The Life Sciences Report* ("TLSR') which included an interview with Dunn entitled "Immuno-Oncology Promises Continued Wealth and Health: LifeTech Capital's Stephen Dunn." AC, ¶ 114; Weltz Decl., Ex. G.  During the interview, "TSLR sought Dunn's opinion on the immune-oncology investment landscape in 2015." AC, ¶ 114.   According to the Amended Complaint, "Dunn spent most of the interview touting the immune-oncology efforts and offerings of some of the largest, best-capitalized, highest research and development spending pharmaceutical companies, including Merck & Co., Inc., Bristol-Myers Squibb Co., Pfizer, Inc. and Roche Holdings, AG" and discussed CBMG in response to TLSR's final question about any other stocks under the radar that investors should know of. AC, ¶¶ 114-115.  The "Disclosure" section at the end of the TLSR interview discloses, among other things, that Dunn's company has a financial relationship with CBMG. Weltz Decl., Ex. G. at 5-6; AC, ¶ 118.

The Amended Complaint alleges that the "truth emerged" and "[d]efendants' promotional scheme was exposed" by an April 7, 2015 post uploaded to *SeekingAlpha.com* by an entity called the "Pump Stopper." AC, ¶¶ 11, 128.  The Amended Complaint alleges that the Pump Stopper's report accuses CBMG of a "massive fraudulent scheme to mislead investors" and that "[c]entral to Pump Stopper's allegations were that paid promotions, and not fundamentals had driven Cellular Biomed's stock price to unsustainable levels."  AC, ¶ 128.

In truth, the Pump Stopper's report devotes only approximately 4 pages to the alleged paid promotional scheme, and the remaining 22 pages concern allegations of: "The CBMG Ecosystem: Fraud Prison, Alleged Illegal Stem Cell Clinics and Financial Disaster" (Weltz Decl., Ex. H, at 6-13), "CBMG's Autologous SVF Knee Treatment:  Countless Other Companies Globally Already Doing This for Years, Technology is Worthless" (id. at 13-16), "CBMG CAR-T: $1.8m cash paid, dead patients, obviously NOT worth $118m+" (id. at 16-19), "CBMG's

CSC Joint Venture:  Limited Rights in Narrow Markets With Expiring Contracts" (id. at 19-20), "CBMG Agreen Acquisition:  Defunct FL Company with Uncompetitive Offering Acquired at >16x Revenue?" (id. at 20-22), "CBMG Accounting and Financial Statements Issues" (id. at 22-24), and "Optimistically Valuing CBMG: -87% to 94.6% Downside" (id. at 24-26).  Weltz Decl., Ex. H.

"On this news, CBMG securities declined $7.00 per share, or over 21.7% to close at $25.22 per share on April 7, 2015." AC, ¶¶ 12, 129.  The Amended Complaint alleges that the stock price had been inflated as a result of the "undisclosed paid promotion scheme." AC, ¶ 10.

The Pump Stopper report, however, does not accuse either LifeTech or Dunn of engaging in an "undisclosed paid promotional scheme."  Weltz Decl., Ex. H.  The Pump Stopper expressly acknowledges LifeTech and Dunn's clear disclosure of compensation arrangements with CBMG.  Id. at 2-3.   While those arrangements were wholly unrelated to Dunn's research and recommendations, the Pump Stopper concluded that they presented a conflict of interest. Id.

Specifically, the Pump Stopper states in its report that the disclosures made by LifeTech and Dunn "prove clear compensation with direct conflicts of interest" and that "the blatant conflict of interest here for someone theoretically publishing research for free on a company that paid them is beyond dispute."  Id.   It further states that the research reports "clearly states he [Dunn] was paid and expecting to collect fees, [and] is expecting banking fees."  Id. at 5.  The anonymous Pump Stopper report posted on *SeekingAlpha.com* states that "[t]he author is short CBMG."  Weltz Decl., Ex. I, at 1.

Despite the detailed and conspicuous disclosures made by LifeTech and Dunn, acknowledged by the Pump Stopper, the Amended Complaint incorrectly alleges that LifeTech and Dunn somehow failed to adequately disclose compensation arrangements with CBMG.  AC, ¶¶ 8, 9, 28, 96, 98, 111, 112, 119.  Based upon these allegations, the Amended Complaint purports to allege two causes of action against LifeTech and Dunn.  The "First Claim" is for an alleged violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act")

7

and Rule 10b-5 thereunder.  AC, ¶¶ 151-154.  The "Second Claim" is for an alleged violation of Rules 10b-5(a) and (c).  AC, ¶¶ 155-160.

As demonstrated in more detail below, the Court should dismiss the Amended Complaint as against LifeTech and Dunn with prejudice because it fails to state a claim against them upon which relief may be granted.

## III.   LEGAL STANDARDS

### A.      General Standards Governing Motions to Dismiss

"A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint."   Browning v. Amyris, Inc., No. 13-cv-02209-WHO, 2014 WL 1285175, at *7 (N.D. Cal. March 24, 2014) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)).  "In reviewing the sufficiency of a complaint, the Court limits itself to a review of the complaint (and any attached exhibits), all documents incorporated into the complaint by reference and matters properly subject to judicial notice."  In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)).  "A complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Browning, 2014 WL 1285175, at *7 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim is facially plausible when it 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id.  "However, the court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit' or 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" Browning, 2014 WL 1285175, at *7 (quoting In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008)).[2]

---

[2] As set forth in the First and Second Reports, LifeTech has been a division of Aurora Capital. See Weltz Dec., Exs. A and D, at 1.  The Amended Complaint fails to allege that LifeTech is an actual entity.   See AC, ¶ 27. It is well-settled that "a nonentity is incapable of suing or being sued."  Banks.com, Inc. v. Keery, No. 09-06039 WHA, 2010 WL 727973, *19 (N.D. Cal. March

8

**B.     Section 10(b) Claims**

To plead a claim under Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) causation.  Oregon Public Employees Retirement Fund v. Apollo Group, Inc., 774 F.3d 598, 603 (9th Cir. 2014) (citing Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008)).   In securities class actions, a plaintiff must meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  Tellabs, 551 U.S. at 308, 313-14.  Rule 9(b) requires that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake."  Fed.R.Civ.P. 9(b).  The PSLRA also imposes stringent rules for pleading falsity and scienter, requiring a high level of detail.  Tellabs, 551 U.S. at 321-29.

**Falsity.**  "The PSLRA has exacting requirements for pleading 'falsity.'"  Browning, 2014 WL 128515, at *8 (quoting Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1070 (9th Cir. 2008)). "A plaintiff must provide 'specific references to specific facts demonstrating that the statements at issue were false or misleading when made.'"  Id. (quoting Wenger v. Lumisys, Inc., 2 F.Supp.2d 1231, 1250 (N.D. Cal. 1998)).  The PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  Apollo Group, 774 F.3d at 604 (quoting 15 U.S.C. § 78u-4(b)(1)(B)).

---

1, 2010).  Therefore, the Amended Complaint should be dismissed as to LifeTech since it is a nonentity, incapable of being sued.

**Scienter.**  A plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).  To adequately demonstrate that a defendant acted with the required state of mind, <u>i.e.</u>, scienter, a complaint must allege that a defendant made false or misleading statements either intentionally or with deliberate recklessness. <u>Browning</u>, 2014 WL 128515, at *8. "Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness." <u>Browning</u>, 2014 WL 128515, at *8 (quoting <u>In re VeriFone Holdings, Inc. Sec. Litig.</u>, 704 F.3d 694, 701 (9th Cir. 2012)). A Section 10(b) claim will survive only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." <u>Tellabs</u>, 551 U.S. at 324.

**Loss causation.**  Additionally, a plaintiff must plead particularized facts demonstrating "a causal connection between the deceptive acts that form the basis for the claims of securities fraud and the injury suffered by the [Plaintiffs]." <u>Apollo Group</u>, 774 F.3d at 608 (quoting <u>Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.</u>, 189 F.3d 1017, 1027 (9th Cir. 1999)).  The plaintiff must establish "that the defendant's fraud was *revealed* to the market and *caused* the resulting losses."  <u>In re Herbalife, Ltd. Sec. Litig.</u>, No. CV 14-2850 DSF (JCGx), 2015 WL 1245191, at *1 (C.D. Cal. Mar. 16, 2015) (quoting <u>Loos v. Immersion Corp.</u>, 762 F.3d 880, 887 (9th Cir. 2014) (emphasis in original)).

# IV.   ARGUMENT

Plaintiffs fail to plead allegations sufficient to state a claim for relief under Section 10(b) and Rule 10b-5.

## A.   The Amended Complaint Should Be Dismissed

### 1.   Plaintiffs Fail to Allege an Actionable Misstatement or Omission

The Amended Complaint alleges in conclusory fashion that LifeTech and Dunn purportedly failed to adequately disclose compensation arrangements with CBMG.  AC, ¶¶ 8, 9,

10

28, 96, 98, 111, 112, 119.  Plaintiffs are wrong, and they fail to plead any material misstatement or omission by LifeTech or Dunn.

Both the First Report and Second Report provide detailed and prominent disclosures of compensation arrangements with CBMG.  The disclosures start at the bottom of the very first page of each of the reports, where it states conspicuously in large type and bold print to **Please See Last Two Pages For Important Disclosures And Analyst Certification**." Weltz Decl., Ex. A, at 1, and Ex. D, at 1.  The "Analyst Certification" section at page 24 of the First Report and page 25 of the Second Report provides that "[n]o part of [Dunn's] compensation is directly or indirectly related to the specific recommendations or views expressed in this research report." Weltz Decl., Ex. A, at 24, and Ex. D, at 25.

Both the First Report and the Second Report set forth in a disclosure chart that: (i) the Analyst or member of the Analyst's household has received compensation directly or indirectly from CBMG in the previous 12 months, (ii) the "Firm or affiliates expect to receive or intend to seek investment banking compensation in [the] next 3 months," and (iii) the "Firm or affiliates received non-securities services compensation in [the] previous 12 months." Id.  Below the disclosure chart in both the First Report and the Second Report, LifeTech and Dunn further disclose that "LifeTech Capital provided strategic consulting services from October 1, 2014 to November 30, 2014 with a portion of the fee received by the analyst as compensation for work performed." Id.

In truth, and contrary to Plaintiffs' unfounded assertions, Dunn properly certified that he had not, in fact, been paid for the "specific recommendations or views expressed in th[e] research report[s]." Id.  Further, there is full disclosure of LifeTech's prior engagement that had ended months before LifeTech and Dunn (via FINRA broker-dealer Aurora Capital) initiated research coverage on CBMG. Id. Accordingly, Plaintiffs' allegations that LifeTech and Dunn made misstatements, tried to conceal or hide compensation arrangements, or were part of some "undisclosed paid promotion scheme," are not accurate.  It appears that Plaintiffs have

11

themselves sought to conceal and obfuscate LifeTech and Dunn's disclosures in the prolix Amended Complaint, even though such disclosures are detailed and conspicuous and were "clear" to the Pump Stopper.  Weltz Decl., Ex. H, at 2, 3, 5.

Moreover, both of the press releases issued by LifeTech concerning the institutional research reports specifically refer back to the reports for "important disclosures" and also provide a link to the reports.  Weltz Decl., Exs. B and E.  Thus, the February 2, 2015 press release states that "The full Initiation Report, including important disclosures, is available for download free of charge at the LifeTech Capital website http://lifetechcapital.com/ltc/?p=4437."  Weltz Decl., Ex. B. LifeTech's February 17, 2015 press release relating to the Second Report similarly states that "The full research report, including important disclosures, is available for download free of charge at the LifeTech Capital website http://lifetechcapital.com/ltc/?p=4443."  Weltz Decl., Ex. E. Also, the IAI blog posts include a copy of the press releases (including links to the full reports) and the February 19, 2015 TSLR interview with Dunn discloses, among other things, that "My company has a financial relationship with the following companies mentioned in this interview:  Cellular Biomedicine Group."  Weltz Decl., Ex. C, at 4, Ex. F, at 2-3, Ex. G, at 6.  These disclosures put the lie to Plaintiffs' claims.

In the face of LifeTech and Dunn's detailed disclosures, Plaintiffs resort to asserting that the disclosures are somehow "inadequate."   Contrary to Plaintiffs' allegations, however, "adequacy" is not the standard.  Plaintiffs are required to plead, under the heightened pleading standards of the PSLRA and Fed. R. Civ. P. Rule 9(b), that LifeTech and Dunn made material statements or omissions that were misleading.  Plaintiffs have failed to even come close to meeting these rigorous pleading standards.

In fact, even the Pump Stopper, the anonymous CBMG short seller who purportedly prompted this lawsuit and upon whom Plaintiffs rely for the "truth," does not contend that LifeTech or Dunn made any material misstatement or omission or engaged in an "undisclosed paid promotion scheme." To the contrary, the Pump Stopper specifically acknowledges the

12

disclosures and purportedly formed a negative opinion about CBMG, in part, based upon such disclosures. Weltz Decl., Ex. H, at 2-3.  Thus, this claim should be dismissed because even if Plaintiffs had plead "[a] litany of alleged false statements," which they have not done, it is "unaccompanied by the pleading of specific facts indicating why those statements were false." Metzler, 540 F.3d at 1070.

To the extent that Plaintiffs may somehow seek to argue that the Amended Complaint alleges that LifeTech and Dunn's disclosures are incomplete, such allegations are similarly unavailing.  "Rule 10b-5 prohibits 'only misleading and untrue statements, not statements that are incomplete.'"  Police Retirement System of St. Louis v. Intuitive Surgical, Inc., 759 F.3d 1051, 1061 (9th Cir. 2014) (quoting Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002)).  The Ninth Circuit has "expressly declined to require a rule of completeness for securities disclosures because 'no matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed that were not.'" Id.  "[T]o be actionable under the securities laws, an omission must be misleading…it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." Id.[3]

The disclosures made by LifeTech and Dunn demonstrate that the there was no affirmative attempt to mislead or to create a materially misleading impression concerning

_____

[3] Plaintiffs' allegations concerning Section 17(b) of the Securities Act of 1933 ("Securities Act") miss the mark. AC, ¶¶ 38-42. The publications relied upon by Plaintiffs concerning LifeTech and Dunn do not "describe such security for consideration received or to be received," as neither LifeTech nor Dunn were paid by CBMG for their research, views or recommendations. See Section 17(b) of the Securities Act.  Plaintiffs' attempt to recast a meritless Section 17(b) claim as a viable claim under Section 10(b) of the Exchange Act should be rejected since there is no private right of action for alleged violations of Section 17(b).  In re Washington Public Power Supply Sys. Sec. Litig., 823 F.2d 1349, 1354-55 (9th Cir. 1987) (no private right of action under Section 17(a) of the Securities Act).

compensation arrangements, or the relationship between or among LifeTech, Dunn and CBMG. More than that, Plaintiffs fail to even supply any reasons for claiming that any alleged statements or omissions were purportedly misleading or untrue.  As such, the Amended Complaint fails to plead any actionable statement or omission.  See In re Cutera Sec. Litig., 610 F.3d 1103, 1108-11 (9th Cir. 2010) (affirming dismissal of 10b-5 claim for, *inter alia*, lack of materiality, where the failure to make full disclosure about company's sales force did not involve any misleading or untrue statements); In re Fusion-io, Inc. Sec. Litig., No. 13-Civ-05368 LHK, 2015 WL 661869, at * 17 (N.D. Cal. Feb. 12, 2015) (plaintiffs' allegations that statements were incomplete because they failed to disclose the existence of certain trends in the flash memory industry failed to survive a motion to dismiss under the PSLRA because the complaint must, but failed to, specify the reasons why the statements made by a defendant were misleading or untrue, not simply why the statements were incomplete.). [4]

The Supreme Court's decision in Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 564 U.S. 135 (2011), provides additional grounds for dismissal.  Plaintiffs allege that IAI published the LifeTech press releases on its blog and that Streetwise Reports published an edition of its online blog *The Life Sciences Report* that included an interview with Dunn.  AC, ¶¶ 107, 112, 113, 114, 115.  In Janus, the Supreme Court found that the maker of a statement is the "person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  Janus, 131 S. Ct. at 2302.

---

[4] Underscoring the flimsy nature of the Amended Complaint's allegations, Plaintiffs contend that the reference to the Chinese PLA General Hospital in the Second Report should have noted that "PLA" refers to China's military.  AC, ¶¶ 108-109.  This is a red herring, not a "red flag."  The fact that a Chinese hospital is a military hospital is of no moment, and Plaintiffs do not set forth any facts suggesting otherwise. The Amended Complaint's rambling and obtuse discourse on Dunn's response to the Pump Stopper and investment banking also fails to support Plaintiffs' claims in any way.  AC, ¶¶ 132-135.

Plaintiffs fail to allege that either LifeTech or Dunn was the person or entity with "ultimate authority" and control over the statements for the IAI and Streetwise Reports publications. Nor is there any allegation that IAI or Streetwise Reports (or any of the so called "Promoter Defendants") have any relationship of any kind with LifeTech or Dunn. Also, the Amended Complaint's "control person" allegations seemingly assert that it was CBMG and Defendant Cao that purportedly had control over LifeTech and Dunn (and other so-called "Promoter Defendants"). AC, ¶¶ 161-167. See also AC, ¶ 25 ("Cellular Biomed is liable for the acts of Defendants Cao and the Promoter Defendants under the doctrine of *respondent superior* and the common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment and with authorization").

### 2. Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter

Plaintiffs' Section 10(b) and Rule 10b-5 claim should also be dismissed because the Amended Complaint fails to allege any facts demonstrating a "strong inference" that LifeTech and Dunn acted with scienter. "The required state of mind is either 'intent to deceive, manipulate, or defraud'…or deliberate recklessness, i.e., 'recklessness [that] reflects some degree of intentional or conscious misconduct.'" In re Velti PLC Sec. Litig., No. 13-cv-03889-WHO, 2015 WL 5736589, at *32 (N.D. Cal. Oct. 1, 2015) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976) and In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 977 (9th Cir. 1999)). "Recklessness in this context 'may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care,...which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that [he or she] must have been aware of it.'" Velti, 2015 WL 5736589, at *32 (quoting Silicon Graphics, 183 F.3d at 976).

"A complaint adequately pleads scienter under the PSLRA only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Velti, 2015 WL 5736589, at *32 (quoting Matrixx

15

Initiatives Inc. v. Siracusano, 563 U.S. 27, 48 (2011)). "The inquiry...is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U.S. at 322-23.

The Amended Complaint fails to plead any facts evidencing scienter. To the contrary, LifeTech and Dunn's disclosures demonstrate an "opposing inference" that cannot be negated or overcome by Plaintiffs. Put differently, had LifeTech and Dunn intended to mislead, or acted with deliberate recklessness, they would not have: (i) prominently set forth on the first page of each report in large type and bold print "**Please See Last Two Pages For Important Disclosures And Analyst Certification**," (ii) disclosed that the Analyst or any member of the Analyst's household had received compensation directly or indirectly from the Company in the previous 12 months, (iii) disclosed that the Firm or affiliates expect to receive or intend to seek investment banking compensation in the next 3 months, (iv) disclosed that the Firm or affiliates had received non-securities services compensation in the previous 12 months, (v) disclosed that "LifeTech Capital provided strategic consulting services from October 1, 2014 to November 30, 2014 with a portion of the fee received by the analyst as compensation for work performed," and (vi) issued press releases concerning the reports that specifically refer back to the reports for "important disclosures" and provide a link to the entire reports. See Weltz Dec., Ex. A, at 1, 24-25, Ex. B, Ex. D, at 1, 25-26, Ex. E.

The Amended Complaint also fails to plead scienter because there are no allegations that LifeTech or Dunn owned or sold any CBMG stock. The absence of any stock sales negates any inference of scienter. In re Downey Sec. Litig., No. CV 08-3261-JFW (RZx), 2009 WL 2767670, at *14 (C.D. Cal. Aug. 21, 2009) (finding that "any inference of scienter is negated by the complete lack of stock sales by the Individual defendants during the class period"); Tripp v. IndyMac Financial Inc., No. CV 07-1635-GW (VBKx), 2007 WL 4591930, at *4 (C.D. Cal. Nov. 29, 2007) ("Here, however, the individual Defendants retained such a large percentage of

16

their stock that an inference of scienter is functionally negated at least as to Perry and Keys, who sold no stock whatsoever.").

Furthermore, Plaintiffs cannot establish scienter by virtue of the strategic consulting services performed months before the publication of First Report or the potential for investment banking compensation.  It is well-settled that generalized allegations of motive arising from personal or financial gain are insufficient to plead scienter.  Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 998 (9th Cir. 2009) (generalized assertions of pecuniary motive are inadequate to meet the heightened pleading requirements to establish scienter); Glazer Capital Management, LP v. Magistri, 549 F.3d 736, 748 (9th Cir. 2008) ("We join our sister circuits and hold that evidence of personal profit motive on the part of officers and directors contemplating a merger is insufficient to raise a strong inference of scienter."); In re Tibco Software, Inc. Sec. Litig., No. C 05-2146 SBA, 2006 WL 1469654, at *21 (N.D. Cal. May 25, 2006) (allegations concerning incentive compensation insufficient as a matter of law to plead scienter). See also Lipton v. PathoGenesis Corp., 284 F.3d 1027, 1035, 1038 (9th Cir. 2002) ("Ninth Circuit case law makes clear that such 'motive and opportunity' evidence alone is insufficient to establish scienter at the pleadings stage").  Consequently, the Amended Complaint should be dismissed because Plaintiffs have failed to plead scienter.

### 3.   Plaintiffs Fail to Plead Loss Causation

Loss causation requires a "casual connection between the material misrepresentation and the loss."  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005).  This "specifically requires a plaintiff to state that the defendant's fraudulent practices were not only 'revealed to the market' through a 'corrective disclosure,' but also that the corrective disclosure caused the resulting losses."  Brown v. Ambow Educ. Holding Ltd., No. CV 12-5062 PSG (AJWx), 2014 WL 523166, at *5 (C.D. Cal. Feb. 6, 2014) (quoting Metzler, 540 F.3d at 1062-64).  Plaintiff must also plead loss causation with the particularity required by Rule 9(b).  Apollo Group, 774 F.3d at 605.

At the pleading stage, Plaintiffs must "allege that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors." Loos, 762 F.3d at 887; See also Metzler, 540 F.3d at 1062 (plaintiff must allege that defendant's share price fell significantly after truth became known). "To be corrective, a disclosure must relate back to the misrepresentation and not to some other negative information about the company." In re Nuveen Funds/City of Alameda Sec. Litig., No. C 08-4575-SI, No. C 09-1437-SI, 2011 WL 1842819, at *10 (N.D. Cal. May 16, 2011) (internal citation omitted). While it may theoretically be possible for a short-seller's opinion to be "factual or revelatory in nature such that it qualifies as a corrective disclosure," such an opinion "would need to reveal to the market something previously hidden or actively concealed." Herbalife, 2015 WL 1245191, at *5 n.9 (quoting Meyer v. Greene, 710 F.3d 1189, 1199 n. 10 (11th Cir. 2013)). The anonymous short-seller's opinion in this case failed to reveal to the market anything previously hidden or actively concealed. As such, the Pump Stopper's report cannot constitute a corrective disclosure.

In Herbalife, plaintiffs alleged that a prominent short-seller's questions during a Herbalife conference call and a hedge fund's ultimate conclusion that Herbalife was a pyramid scheme were corrective disclosures that triggered Herbalife's stock price decline. Id. at *2. The court there dismissed the complaint for failure to plead loss causation as neither the short-seller's questions nor the hedge fund's analysis was based on previously unavailable information and therefore could not be corrective disclosures. Id. at *5.[5] Like the court in Herbalife, this Court

---

[5] An analyst's or short-seller's opinion about a company, without more, cannot be a corrective disclosure. In Meyer, the Eleventh Circuit rejected the plaintiffs' contention that an analyst's opinion was a corrective disclosure because it provided "'expert analysis of the source material' that was previously unavailable to the market." 710 F.3d at 1199. Although the analysis itself was new, the "mere repackaging of already-public information by an analyst or short-seller is simply insufficient to constitute a corrective disclosure." Id. The court there explained that "if the information relied upon in forming an opinion was previously known with the market, the

18

should dismiss the Amended Complaint for failure to plead loss causation because the Pump Stopper's report merely repeated already-public information.[6]

The recent decision in In re Blue Earth, Inc., Sec. Class Action Litig., Case No. CV 14-08263-DSF (JEMx) (C.D. Cal. November 3, 2015) is instructive. Weltz Dec., Ex. J. In Blue Earth, the Pump Stopper published an article on the website *SeekingAlpha.com* accusing Blue Earth of lying about how much it would receive from the UPStealth system it sold, falsely stating that it would have 3 to 4 CHP energy plants turned on by the end of 2014, past financial disasters, an ongoing law enforcement investigation, hiring of stock promoters and accounting red flags. Following the publication of the Pump Stopper report, Blue Earth's stock declined by 50%. Id. at 3-6.

According to plaintiff in Blue Earth, the Pump Stopper report constituted a corrective disclosure that revealed the falsity of Blue Earth's representations concerning the "UPStealth's market potential and its CHP projects." Id. The 58-page Pump Stopper report there devoted 5 pages to addressing Blue Earth's alleged misrepresentations regarding UPStealth and a single sentence to the number of CHP projects that Blue Earth claimed it had in progress. Id. The

---

only thing actually disclosed to the market when the opinion is released *is the opinion itself*, and such an opinion, standing alone, cannot "reveal[] to the market the falsity" of prior misrepresentations. Id. (emphasis in original). Here, too, the only thing disclosed to the market by the Pump Stopper report was its opinion based upon a compilation of previously disclosed and publicly available information.

[6] See also Cent. States v. Fed. Home Loan Mortg. Corp., 543 Fed. Appx. 72, 75 (2d Cir. 2013) (finding that a series of articles in *The Wall Street Journal* and *New York Times* were not corrective disclosures because they did not "reveal some then-undisclosed *fact* with regard to the specific misrepresentations alleged in the complaint," and instead merely "expressed negative *opinions*...based on information that was already publicly available."); In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501, 512 (2d Cir. 2010) ("A negative...characterization of previously disclosed facts does not constitute a corrective disclosure...").

remainder of the report covered Blue Earth's past financial disasters, the possibility of an ongoing law enforcement investigation, hiring of stock promoters and accounting red flags.  Id.

The court in Blue Earth granted defendants' motion to dismiss because the Pump Stopper report was insufficient to constitute a corrective disclosure and thereby failed to establish loss causation.  Weltz Decl., Ex. J, at 3-6.  The court there found that "[m]ost notably, the Pump Stopper Report is a compilation of publicly available information, some of which, the author himself proclaims, 'takes 1 minute with Google' to locate."  Id. at 4.  As such, the court reasoned, the alleged corrective disclosure failed to present facts that were publicly revealed for the first time.  Id.  "Another glaring problem with the Pump Stopper Report as a corrective disclosure," was that only a portion of the report addressed the alleged misrepresentations at issue in Blue Earth.  Id.

The court there stated that even assuming the information pertaining to UPStealth and the CHP projects had not been previously made available to the public, plaintiff had not plausibly pled that the that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or *other unrelated factors*.  Id. at 5.  In that regard, the court found that the "[p]laintiff had not plausibly pled that the stock price was impacted by the specific disclosures alleged in the [complaint], as opposed to by the massive amount of negative information contained in the report that was unrelated to the alleged misrepresentations involving UPStealth and the CHP projects."  Weltz Decl., Ex. J, at 5.

The fact pattern in Blue Earth is strikingly similar to the instant case and warrants the same outcome.  The Pump Stopper report on CBMG is a compilation of publicly available information, some of which, the author himself proclaims, "literally 1 minute on Google turns this information up immediately," and the alleged corrective disclosure fails to present facts that were publicly revealed for the first time.  Weltz Decl., Ex. H, at 12.  As in Blue Earth, another glaring problem with the Pump Stopper report as a corrective disclosure is that only a portion of

20

the report, approximately 4 pages of the 26-page report, addresses the alleged misrepresentations at issue – the purported undisclosed paid promotional scheme.  Id. at 2-5.  The remainder of the report addresses allegations of "The CBMG Ecosystem: Fraud Prison, Alleged Illegal Stem Cell Clinics and Financial Disaster" (id. at 6-13), "CBMG's Autologous SVF Knee Treatment: Countless Other Companies Globally Already Doing This for Years, Technology is Worthless" (id. at 13-16), "CBMG CAR-T: $1.8m cash paid, dead patients, obviously NOT worth $118m+" (id. at 16-19), "CBMG's CSC Joint Venture:  Limited Rights in Narrow Markets With Expiring Contracts" (Weltz Decl., Ex. H, at 19-20), "CBMG Agreen Acquisition:  Defunct FL Company with Uncompetitive Offering Acquired at >16x Revenue?" (id. at 20-22), "CBMG Accounting and Financial Statements Issues" (id. at 22-24), and "Optimistically Valuing CBMG: -87% to 94.6% Downside" (id. at 24-26).

Furthermore, Plaintiffs here, as was the case with the plaintiff in Blue Earth, have not plausibly pled that CBMG's stock price was impacted by the specific disclosures alleged in the Amended Complaint, as opposed to the "massive amount" of "negative information" contained in the Pump Stopper's report that was unrelated to the alleged misrepresentations involving the purported paid promotional scheme.   Consequently, the Amended Complaint should be dismissed because it fails to plead loss causation.

### 4.  Plaintiffs Fail to Plead Scheme Liability

The "Second Claim" of the Amended Complaint purports to assert a claim against all Defendants for scheme liability under Rule 10b-5(a) and (c).  AC, ¶¶ 156-160.  This claim also fails as a matter of law.

To plead a claim under Rule 10b-5(a) and (c) for scheme liability, Plaintiffs must allege facts showing: "(1) that the defendant committed a deceptive or manipulative act; (2) in furtherance of the alleged scheme to defraud; (3) with scienter; and (4) reliance."  Abbate v. Wells Fargo Bank, N.A., No. CV 10-6561 DOC (RBNx), 2011 WL 9698215, at *2 (C.D. Cal. Nov. 17, 2011).  "A defendant may only be liable as part of a fraudulent scheme based upon

misrepresentations and omissions under Rules 10b-5(a) or (c) when the scheme also encompasses conduct beyond those misrepresentations or omissions " which form the basis of a Rule 10b-5(b) omissions claim.  <u>WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.</u>, 655 F.3d 1039, 1057 (9th Cir. 2011).

Other than vague and boilerplate allegations, the Amended Complaint fails to allege any supposed details of LifeTech's or Dunn's involvement in any scheme or any other activity or conduct conceivably covered by Rule 10b-5(a) and (c).  Also, as demonstrated, Plaintiff cannot establish that LifeTech or Dunn acted with scienter.  Therefore, the Amended Complaint's Rule10b-5(a) and (c) claim against Dunn and LifeTech should be dismissed. <u>WPP Lux.</u>, 655 F.3d at 1058 (Rule 10b-5(a) and (c) claim dismissed where plaintiff failed to allege any facts separate from those already alleged in Rule 10b-5(b) omissions claim); <u>Abbate</u>, 2011 WL 9698215 at *2 (Rule 10b-5(a) and (c) claims dismissed where plaintiffs could not point to any facts showing that defendants engaged in any deceptive or manipulative act).[7]

Finally, to the extent Plaintiffs seek to allege that LifeTech and Dunn purportedly aided and abetted the other Defendants, such claim must fail since there is no private cause of action under Section 10(b) of the Exchange Act for aiding and abetting.  See <u>Central Bank of Denver v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164 (1994).

///
///
///
///

---

[7] In <u>In re Flannery</u>, S.E.C. Release No. 3981, 2014 WL 7145625 (Dec. 15, 2014), the Commission, in a 3-2 decision, stated that it "disagreed" with the "beyond-a-misstatement" approach adopted by certain Circuit Courts, including the Ninth Circuit in <u>WPP Lux</u>.  <u>See</u> <u>Flannery</u>, 2014 WL 7145625 at *14.  <u>Flannery</u> was recently vacated on December 8, 2015 by the First Circuit.  <u>See</u> <u>Flannery v. SEC</u>, 2015 U.S. App. LEXIS 21244 (1st Cir. Dec. 8, 2015).

**V.   CONCLUSION**

For each of the foregoing reasons, the Amended Complaint fails to state a claim. Defendants LifeTech Capital and Stephen M. Dunn respectfully request that the Court grant their motion to dismiss Plaintiffs' incurable Amended Complaint with prejudice.

Dated:  January 19, 2016

JORGENSON, SIEGEL,
McCLURE & FLEGEL, LLP


By: */s/ Gregory Klingsporn*
    Gregory K. Klingsporn
1100 Alma Street, Suite 210
Menlo Park, CA  94025
Telephone:     (650) 324-9300
Facsimile:      (650) 324-0227
Email: gkk@jsmf.com


SICHENZIA ROSS FRIEDMAN
FERENCE LLP
Irwin Weltz, Esq. (Admitted *Pro Hac Vice*)
61 Broadway, 32nd Floor
New York, NY  10006
Telephone:     (212) 930-9700
Facsimile:      (212) 930-9725
Email: iweltz@srff.com

Attorneys for Defendants
LIFETECH CAPITAL and
STEPHEN M. DUNN

23